UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 4-92-906(DSD)


Reggie White, Michael
Buck, Hardy Nickerson,
Vann McElroy and Dave
Duerson,

       Plaintiffs,

v.                                                    **ORDER**

National Football League;
The Five Smiths, Inc.;
Buffalo Bills, Inc.;
Chicago Bears Football Club,
Inc.; Cincinnati Bengals, Inc.;
Cleveland Browns, Inc.; The
Dallas Cowboys Football Club,
Ltd.; PDB Sports, Ltd.; The
Detroit Lions, Inc.; The Green
Bay Packers, Inc.; Houston Oilers,
Inc.; Indianapolis Colts, Inc.;
Kansas City Chiefs Football Club,
Inc.; The Los Angeles Raiders, Ltd.;
Los Angeles Rams Football Company,
Inc.; Miami Dolphins, Ltd.;
Minnesota Vikings Football Club,
Inc.; KMS Patriots Limited Partnership;
The New Orleans Saints Limited Partnership;
New York Football Giants, Inc.; New York
Jets Football Club, Inc.; The Philadelphia
Eagles Football Club, Inc.; B & B Holdings,
Inc.; Pittsburgh Steelers Sports, Inc.;
The Chargers Football Company; The San
Francisco Forty-Niners, Ltd.; The
Seattle Seahawks, Inc.; Tampa Bay Area
NFL Football Club, Inc.; and Pro-Football,
Inc.;

       Defendants.


    This matter is before the court upon the National Football

League Management Council's ("NFLMC") motion to vacate judgment

regarding Michael Vick and for recusal of the court or modification of the final consent judgment.  Based upon a review of the record and proceedings herein, and for the reasons that follow, the NFLMC's motion is denied.

## BACKGROUND

The instant motion arises from a longstanding dispute between the NFLMC and the National Football League Players Association ("NFLPA").  On September 21, 1992 - two weeks after a jury in McNeil v. National Football League ["NFL"], No. 4-90-476, 1992 WL 315292 (D. Minn. Sept. 10, 1992), found that the NFL's right of first refusal/compensation rules violated federal antitrust laws - five players filed a class action antitrust action against the NFL challenging the NFL's employment practices.  After five months of motion practice and negotiation, the parties entered into a stipulated settlement agreement ("SSA") that the court approved on April 30, 1993.  See White v. Nat'l Football League, 922 F. Supp. 1389 (D. Minn. 1993).  Under Article XX of the SSA, the court retained jurisdiction over the action to "effectuate and enforce" the terms of the agreement and final consent judgment.  (See SSA art. XX, Doc. No. 524.)  Over the years, the court approved amendments to the SSA, with each version containing the continuing jurisdiction provision.  (See Order of Aug. 24, 2006, Doc. No. 526.)  The SSA also contained a provision granting jurisdiction

over specified disputes to a Special Master agreed upon and recommended to the court for approval by the parties. (See SSA art. XXII.) The Special Master's determinations bound the parties, subject to the court's review on appeal. (Id.); see also NFL Collective Bargaining Agreement 2006-2012, art. XXVI. It was under this framework that the court took up the instant matter.

On September 5, 2007, the NFLMC sought a declaration that enforcement in a non-injury grievance of the contractual rights of the Atlanta Falcons ("Falcons") to recover amounts already paid to quarterback Michael Vick ("Vick") would not violate Article XVII, § 9(c) of the SSA. The Falcons argued that Vick's guilty plea to federal criminal dog fighting charges on August 20, 2007, triggered several default provisions in Vick's 2006 player contract. Accordingly, the team sought the return of $19.97 million in signing and roster bonuses. The NFLPA opposed the forfeiture, and the parties argued the matter before Special Master Stephen B. Burbank on October 4, 2007. He concluded on October 9, 2007, that § 9(c) did not prohibit the forfeiture of the bonuses paid to Vick and conditionally determined that the NFLMC's grievance provided no grounds for alternative legal or equitable relief to recover any amount that § 9(c) did protect from forfeiture. The NFLPA appealed the Special Master's decision, and the court received briefing and heard arguments on the matter on November 30, 2007.

On February 1, 2008, the court affirmed in part and reversed in part the recommendation of the Special Master. Based on recent precedent and analysis of the SSA and collective bargaining agreement, the court determined that § 9(c) precluded the forfeiture of roster bonus amounts "already earned" by Vick and that the protections of § 9(c) were not limited to contractual forfeitures. See White v. Nat'l Football League, 533 F. Supp. 2d 929 (D. Minn. 2008). The NFLMC filed a motion to vacate the court's judgment pursuant to Federal Rule of Civil Procedure 59(e) or 60(b) on February 14, 2008, alleging that the court has demonstrated bias and prejudice in the Vick case and the ongoing White litigation. It argues that the court should vacate its February 1 order and either remove itself from the case or terminate its continuing jurisdiction over the White settlement agreement.

## DISCUSSION

Under Rule 59(e), the court may alter or amend its judgment only if it finds a "manifest" error of law or fact in its ruling. See Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) (internal quotation and citation omitted). Such motions serve a limited function and "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could

have been offered or raised prior to entry of judgment." <u>Baker v. John Morrell & Co.</u>, 266 F. Supp. 2d 909, 919 (N.D. Iowa 2003) (citing <u>Hagerman</u>, 839 F.2d at 414).

Similarly, pursuant to Rule 60(b) the court may relieve a party or its legal representative from a final judgment, order or proceeding for, among other reasons, mistake, inadvertence, surprise or excusable neglect. <u>See MIF Realty L.P. v. Rochester Assocs.</u>, 92 F.3d 752, 755 (8th Cir. 1996). A Rule 60(b) motion is committed to the sound discretion of the court and is generally disfavored. <u>Id.</u>; <u>see Rosebud Sioux Tribe v. A & P Steel, Inc.</u>, 733 F.2d 509, 515 (8th Cir. 1984). Under Rule 60(b), the movant must demonstrate "exceptional circumstances to justify relief." <u>Brooks v. Ferguson-Florissant Sch. Dist.</u>, 113 F.3d 903, 904 (8th Cir. 1997).

## I.   Judicial Disqualification

The NFLMC argues that the February 1 order should be vacated because of judicial bias and the appearance of partiality. In support of its motion, the NFLMC alleges the following incidents show bias or prejudice by the court:

- An interview with the court in the January 28, 2008, issue of <u>Street & Smith's SportsBusiness Journal</u> discussing NFL owners and the <u>White</u> settlement agreement.

- An interview with the court in the July 10, 2005, issue of the <u>Colorado Springs Gazette</u> discussing a previous Rule 60(b) motion in which the NFLMC requested that the court terminate its continuing jurisdiction over the matter.

- An alleged series of ex parte conversations between the court and NFLPA Executive Director Gene Upshaw ("Upshaw") prior to hearings before the court - including the November 30, 2007, hearing in the Vick matter.

Title 28, sections 144 and 455 of the United States Code govern the recusal or disqualification of a federal judge.

## A. 28 U.S.C. § 144

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

A successful § 144 motion requires a "showing of actual bias." Williamson v. Ind. Univ., 345 F.3d 459, 464 (7th Cir. 2003); see Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 166 (3d Cir. 1993). "Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion" and other nonfactual matters are not ordinarily sufficient to require recusal. See Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995); see also United States v. Faul, Civ. No.

6

3:99-41, 2007 WL 1847371, at *5 (D.N.D. June 25, 2007). Rather, to be legally sufficient, the affidavit must provide specific facts "stated with particularity and must be definite as to times, places, persons, and circumstances." Tezak v. United States, 256 F.3d 702, 717 (7th Cir. 2001). Further, the accompanying affidavit "must strictly comply with all statutory requirements before it will disqualify a judge." In re Medlock, 406 F.3d 1066, 1073 (8th Cir. 2005); see also United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992); United States v. Anderson, 433 F.2d 856, 859 (8th Cir. 1970). It is the judge's obligation "to probe the legal sufficiency of the petitioner's affidavit and not to disqualify [himself] unnecessarily." Davis v. Comm'r, 734 F.2d 1302, 1303 (8th Cir. 1984).

The NFLMC's submissions do not meet the high bar for disqualification set by § 144. The declarations accompanying the motion fail to allege actual bias, focusing instead on the appearance of prejudice. Further, the NFLMC violated the express terms of § 144 by submitting two declarations, neither of which was accompanied by the required certificate of good faith. Moreover, neither submission adequately explained the delay in filing a motion that was based largely on events occurring years before the Vick decision. Indeed, the NFLMC filed its motion ten days after the adverse judgment and gave no adequate reason for ignoring § 144's requirement that the allegations be made ten days *before*

*the hearing*.   For these reasons, the court will not disqualify itself pursuant to 28 U.S.C. § 144.

**B.   28 U.S.C. § 455**

Section 455 is divided into two subsections.   Section 455(a) sets forth a general declaration for disqualification while § 455(b) lists specific instances in which disqualification is required.   See Microsoft Corp. v. United States, 530 U.S. 1301, 1301 (2000).   The statute provides:

> (a) Any justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding

28 U.S.C. § 455.

To determine whether Rule 59 or 60 relief is appropriate based on a violation of § 455, the court considers the risk of injustice to the parties, the risk that denial of relief will cause injustice in other cases and the risk of undermining public confidence in the judicial process.   See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988).   Under either subsection, the honesty, integrity and impartiality of judges is presumed;

therefore, a party seeking recusal bears the substantial burden of proving otherwise.  See United States v. Martinez, 446 F.3d 878, 883 (8th Cir. 2006); Dyas v. Lockhart, 705 F.2d 993, 997 (8th Cir. 1983).

### 1.    Section 455(b)(1)

As with § 144, § 455(b)(1) concerns a judge's actual bias or prejudice.    The bias or prejudice "must be personal and extrajudicial; it must derive from something other than that which the judge learned by participating in the case." United States v. Amedeo, 487 F.3d 823, 828-29 (11th Cir. 2007) (citation omitted). Opinions held by judges as a result of what they learned in earlier proceedings do not constitute bias or prejudice.   See Liteky v. United States, 510 U.S. 540, 551 (1994).

The NFLMC's § 455(b)(1) motion, like its § 144 motion, fails for lack of demonstrable bias.   Despite claiming § 455(b)(1) relief, the NFLMC devotes no more than a few lines to that subsection in any of its moving papers and cites little besides the adverse result to support its allegations of actual bias.    An unfavorable judicial ruling, however, "does not raise an inference of bias." Harris v. Missouri, 960 F.2d 738, 740 (8th Cir. 1992). Accordingly, the court denies the NFLMC's motion for § 455(b)(1) relief.

### 2.   Section 455(a)

The NFLMC argues that the court's public comments and ex parte meetings with Upshaw satisfy § 455(a)'s objective standard and warrant disqualification.[1]  Section 455(a) is a "catchall" recusal provision, covering both "interest or relationship" and "bias or prejudice" grounds but requiring them all to be evaluated on an "objective basis."   See Liteky, 510 U.S. at 548 (internal quotations and citation omitted).   Thus, whether a judge is actually biased is irrelevant – the "issue is 'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of the case.'" Scenic Holding, LLC v. New Bd. of Trs. of the Tabernacle Missionary Baptist Church, Inc., 506 F.3d 656, 662 (8th Cir. 2007) (quoting Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc)).  The "relevant facts" are the "facts as they existed, and not as they were surmised or reported."   Cheney v. U.S. Dist. Court for the Dist. of Columbia, 541 U.S. 913, 914 (2004).

As to the public comments, the NFLMC maintains that several quotations from the January 28, 2008, and July 10, 2005, articles give the appearance of bias.  It cites the following statements:

---

[1] The NFLMC also suggests that the pictures of the undersigned with a football in his hands accompanying one of the articles demonstrate bias and prejudice.  This argument, made without any legal support, borders on frivolity, and the court will not address it herein.

- "[NFL owners] pretend they're getting beaten around. Well, they did, initially, but they had a position that was not legally sound." (Levy Decl. Ex. 1.)

- "I think if you ask [NFL Commissioner Paul] Tagliabue, he would say, 'The whole thing has come out our way.' Because, even though they complain about it ... all they've done is make tons of money." (Id.)

- "I could walk away from this case. But there's one problem: I know that I know too much. They know, including the NFL guys, that they don't have to re-educate me every time they show up here." (Id.)

- "It was just an off-handed comment [about discontinuing the court's jurisdiction over the settlement agreement]. But a few days later I received a letter from the owners' group requesting, based on what I said, that I remove myself from matters involving the NFL and the players' union. I laughed at the letter and wrote them a letter kindly denying their request. They would have loved for me to be out of the way. But the letters were good-natured fun." (Id. Ex. 2.)

The NFLMC maintains that these comments violate Canon 3(A)(6) of the Judicial Code of Conduct and would lead a reasonable person to question the judge's impartiality. It argues that the comments demonstrate a bias against the NFL clubs and demonstrate an unwillingness to objectively reconsider issues like the court's continuing jurisdiction.

Canon 3(A)(6) provides that a judge "should avoid public comment on the merits of a pending or impending action." The Code and § 455(a) are not coextensive, and any public comments must be considered in the context in which they were issued. See In re

11

Boston's Children First, 244 F.3d 164, 168 (1st Cir. 2001); In re Barry, 946 F.2d 913, 914 (D.C. Cir. 1991); United States v. Haldeman, 559 F.2d 31, 132-36 (D.C. Cir. 1976). Nevertheless, the general rarity of such public statements and the ease with which they may be avoided make it more likely that a reasonable person will interpret the statements as evidence of bias. See In re Boston's Children, 244 F.3d at 170; In re Allied-Signal, Inc., 891 F.2d 967, 971 (1st Cir. 1989).

Here, the NFLMC's reliance on Canon 3(A)(6) is misplaced. None of the January 28 or July 10 comments was remotely related to a pending matter.[2]   Indeed, the Colorado Springs Gazette article was published years before the Vick matter was filed and the SportsBusiness Journal article - supposedly damning because it appeared while the Vick matter was sub judice - contains no reference whatsoever to Vick, the Falcons or pending issues. Further, the NFLMC's finding of bias in the comments requires a results-oriented reading of the quotations divorced from their context.   Each article focused on the history of the NFL's collective bargaining agreement and the role of the court in that process, and neither featured quotations or analysis that demonstrated partiality. (See Levy Decl. Exs. 1, 2.)   Instead, the

---

[2] Although styled as a dispute between the NFLMC and the NFLPA, the substance of the Vick matter was a dispute between Vick and the Atlanta Falcons over contract incentives - neither of whom were discussed in the articles.

court praised the leadership of both the NFLMC and the NFLPA and suggested that both sides had benefitted from the agreement reached over fifteen years ago.  Moreover, although the court did not give a legally detailed explanation of its response to the NFLMC's previous motion to terminate the court's ongoing jurisdiction, the eight-page written order on the fully briefed matter demonstrates the seriousness with which the court considered the issue.  (<u>See</u> Order of Dec. 23, 1997, Doc. No. 444.)

As to the NFLMC's claim that the comments, when viewed collectively, and the meetings with Upshaw create the appearance of bias, the court disagrees.  The NFLMC places undue emphasis on the way an "average person" would view the comments and meetings; the true test for § 455(a) purposes is the manner in which an "average person ... *who knows all the relevant facts of the case*" views the situation.  <u>See</u> <u>Scenic Holding</u>, 506 F.3d at 662 (emphasis added). That well-informed average person would understand the long history of the dispute between the NFLMC and the NFLPA and impute no bias to comments that merely reflected upon that history.  That same average person would also think little of the meetings with Upshaw, aware that the practice grew out of the 1992 trial and negotiations in which all parties were invited to and did frequent chambers, that nothing about the merits of any case was ever discussed, and that such meetings also preceded the 1995, 1997, 2000 and 2001 decisions in which the court found for the NFLMC.  In short, that

13

average person would consider the comments and meetings in light of the unique facts of this case - especially the familiarity of all parties gained over the court's long involvement with the matter - and conclude that the court possesses the utmost respect for both sides but considers each matter before him as an indifferent arbiter, devoid of bias or prejudice.  Accordingly, there has been no injustice to the parties nor is there a risk of undermining public confidence in the judicial process, and the § 455(a) claim fails.

For these reasons, the court denies the NFLMC's motion to disqualify pursuant to 28 U.S.C. §§ 144, 455(a) and 455(b)(1), and it will not vacate judgment under Rule 59(e) or 60(b) in the Vick matter.

## II.  Modification of Final Consent Judgment

The NFLMC moves in the alternative for the court to modify the final consent judgment and terminate its jurisdiction over the stipulated settlement agreement.  In so doing, the NFLMC again takes up an issue it first raised in 1997.  It argues now, as it did then, that the ratification of the NFLPA as the collective bargaining agreement representative of the players and the emergence of a more cooperative bargaining relationship between the clubs and their players are factual changes warranting modification of the settlement agreement.  It further maintains that the Supreme Court's decision in Brown v. Pro Football, Inc., 518 U.S. 231

14

(1996), created a change in legal circumstances that supports modification in this case and that the court's fifteen years of continuing jurisdiction is enough.

The court has considered these arguments anew but reaches the same conclusion as it did in 1997.  As then, there is no agreement between the parties to terminate the court's jurisdiction. Instead, the NFLPA actively opposes the NFLMC's motion to modify the settlement agreement.  Further, no evidence suggests that the relationship between the two parties is more harmonious now than it was when they entered into the settlement agreement, and nothing in Brown limits the court's jurisdiction over the terms of the agreement in this case.  Indeed, there has been no change in law or fact in this case to justify terminating the court's ongoing jurisdiction, a bargained-for feature of the settlement agreement. Accordingly, the court denies the NFLMC's motion to modify the agreement.

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that the NFLMC's motion to vacate judgment regarding Michael Vick and for recusal of the court or modification of the final consent judgment [Doc. No. 575] is denied.

Dated:  April 22, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court

15