**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Reggie White, et al., | Case No. 92-906 (DSD/SPMS) |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY THE ST. PAUL PIONEER PRESS AND THE STAR TRIBUNE** |
| v. | |
| National Football League, et al. | |
| Defendants. | |

Plaintiffs are before this Court objecting in part to the recommendations of Special Master Stephen Burbank dated February 1, 2001, which interpreted certain provisions of a Stipulation and Settlement Agreement ("SSA") entered into long ago by the parties to this action. Here, Plaintiffs object to the Special Master's interpretation of the SSA as it relates to revenues derived from certain contracts for NFL television broadcast rights.

As a part of their Objection, Plaintiffs filed the trial record of the proceeding before Special Master Burbank under seal in this Court. That record consisted of pre- and post-trial submissions of the parties, the trial transcript and other testimony of the proceeding before the Special Master, and the admitted joint trial exhibits. Plaintiffs also filed, again under seal, their memorandum in support of their Objection and supporting documents and exhibits. The only basis for sealing this information is a stipulated Protective Order dated July 14, 2010, entered in the proceeding before the Special Master. Neither this Court nor any U.S. Magistrate Judge has approved any protective

1

order in the present proceeding.  Plaintiffs have asked this Court to allow them to file a redacted memorandum in support of their Objection.

Pursuant to Federal Rule of Civil Procedure 24(b) ("Rule 24(b)"), the St. Paul Pioneer Press ("Pioneer Press") and the Star Tribune ("Star Tribune"), (together the "News Organizations") hereby move to intervene in these proceedings in support of Plaintiffs' motion.  They also ask this Court to issue an Order to unseal memoranda and other supporting papers, including exhibits, having to do with Plaintiffs' Objection to the recommendations of the Special Master ("Plaintiffs' Objection Materials") and Defendant NFL's yet-to-be-filed response ("NFL Materials") (together "Objection Materials").  Furthermore, the News Organizations ask this Court to unseal any documents in addition to the "Objection Materials" also presented to this Court by the parties for the Court's use in making its determination.  Finally, the News Organizations seek an Order of the Court requiring the parties to unseal all the portions of the record provided to the Court which the parties cannot, in good faith, identify as confidential.

This motion is based upon established First Amendment and common law principles.  Under these principles, the News Organizations should be allowed to intervene, and their motion to unseal the Objection Materials should be granted, to the extent that the NFL Defendants cannot affirmatively demonstrate that good cause and compelling reasons exist which support the sealing of those documents.

## **PRELIMINARY STATEMENT**

While the parties here conducted the expedited trial of their dispute before Special Master Burbank, they were operating under the terms of a stipulated order prepared by the parties hereto to govern access to documents before the Special Master ("Protective Order"). See Exhibit A to Affidavit of Paul R. Hannah. The Protective Order allowed any party to designate as "confidential" any document "that it in good faith contends to constitute or contain trade secrets or other confidential information." Protective Order, ¶ 1. If a party seeks court review of the proceeding, which Plaintiffs have done in this case, "the parties agree to file any documents containing 'Confidential' material under seal." Protective Order, ¶ 5.

Apparently, the NFL Defendants designated every, or nearly every, document, exhibit and transcript as "Confidential." As a result, the entire record of the proceeding before the Special Master is "Confidential," and any memorandum, document in support of any memorandum, or any other pleading which refers to such information is to be filed under seal. And as far as the News Organizations are aware, no one has demonstrated to the Special Master, a Magistrate Judge or this Court good cause or compelling reasons for a single document to be designated as "Confidential."

The News Organizations have a presumptive right of access to the Objection Materials. The Court's decision on this Objection will resolve the parties' dispute over the interpretation of the SSA as it applies to television broadcast rights. This motion, like a summary judgment motion, "adjudicates substantive rights and serves as a substitute for

trial." Therefore, documents filed with respect to such motions are subject to a presumption of public access under "the more vigorous First Amendment standard." Under that standard, public access may be limited only if denial of access "serves an important governmental interest and there is no less restrictive way to serve that governmental interest." Rushford v. New Yorker Magazine, 846 F.2d 249, 252 (4th Cir. 1988). Judge Donovan Frank has ruled that a party seeking to seal summary judgment materials faces "a heightened burden to overcome the presumptive right" of access to such dispositive materials. In re: Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., 245 F.R.D. 632, 636 (D. Minn. 2007).[1]

The public's right to know what goes on in its courthouses is a fundamental right. Consequently, the First Amendment and common law grant the public - and the News Organizations - the right to review judicial filings such as the Objection Materials. Indeed, the public's interest in this case is particularly compelling, given the economic significance of professional football and national impact on many levels of professional sports in general and professional football in particular.

Here, of course, plaintiffs have filed the Objection Materials under seal, not because they necessarily believe the documents should be protected, but simply because the NFL Defendants have designated the documents plaintiffs wish to place before the Court as "Confidential." Even on the rare occasion that a litigant's legitimate interests in

---

[1] The Court declined to address the question whether the right of access is created by the First Amendment since the result it reached would be the same under a constitutional or common law standard. Id., fn. 4.

causing certain papers to be filed under seal or in redacted form trump the public's right to access judicial filings, the law demands that such denial of access be necessitated by compelling reasons and narrowly tailored to serve those interests. Consequently, this Court should require the NFL Defendants, which designated these documents as "confidential," to make a particularized showing of a need for confidentiality before the Court allows them to seal portions of the Objection Materials. If the NFL Defendants are able to make such a showing, the confidential material in question should be protected by the least restrictive means possible.

## ARGUMENT

**I.      The News Organizations are Entitled to Intervene on the Public's Behalf Pursuant to Rule 24(b) for the Limited Purpose of Moving to Unseal the Objection Materials.**

The News Organizations have a right under the First Amendment and common law to intervene in this action. They also proceed pursuant to Rule 24(b), Fed.R.Civ.P., upon which courts uniformly rely to entertain motions by non-parties seeking access to judicial pleadings and documents. See, e.g., Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (3d Cir. 1994) ("the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered into that action"); In re Baycol Prods. Litig., 214 F.R.D. 542 (D. Minn. 2003) ("Baycol I"); Northern States Power Co. v. Westinghouse Elec., Corp., 156 F.R.D. 168 (D. Minn. 1994). "Although the Eighth Circuit has not yet issued a decision on this precise issue, the clear majority view allows the use of Rule 24(b) to challenge a confidentiality order." Baycol I, 214 F.R.D. at 543

(allowing to a newspaper to intervene to challenge a confidentiality order). The News Organizations have found no reason to believe that the Eighth Circuit would create a body of contrary law. Further, "Rule 24(b)(2) should be interpreted broadly to allow news media an effective mechanism to contest the scope or need for a confidentiality order." Id. at 544. See also Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 n.25 (1982) ("representatives of the press and general 'public must be given an opportunity to be heard on the question of their exclusion'") (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 401 (1979)); Jessup v. Luther, 227 F.3d 993, 997 (7th Cir. 2000) (holding that the right of the press to intervene to challenge the closure of courts in civil litigation "is rooted in the public's well-established right of access to public proceedings"); Washington Post v. Robinson, 935 F.2d 282, 287 (D.C. Cir. 1991) ("The first amendment guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed."); Bigelow v. District of Columbia, 122 F.R.D. 111, 112 (D.D.C. 1988); Westmoreland v. CBS, 752 F.2d 16, 23 (2d Cir. 1984) ("the First Amendment does secure to the public and to the press a right of access to civil proceedings"). "The principle consideration for this Court in determining whether permissive intervention should be granted is whether such intervention will unduly delay or prejudice the adjudication of the parties' rights." Baycol I, 214 F.R.D. at 544 (citing South Dakota ex rel. Barnett v. U.S. Dep't of Interior, 317 F.3d 783, 787 (8th Cir. 2003)). Because the News Organizations seek to intervene only to exercise their right of access, and not to

engage in the substance of the underlying litigation, there can be no question that their "intervention will [not] unduly delay or prejudice the adjudication of the parties' rights." Baycol I, 214 F.R.D. at 544.  Pursuant to Rule 24(b), and in keeping with the Rule's principles, the News Organizations should be granted leave to intervene.

II.     **The Wholesale Filing under Seal of the Objection Materials is Unwarranted, and the Court Should Unseal those Documents.**

   A.     **The First Amendment and common law establish a presumption of access to the Objection Materials.**

The First Amendment and common law grant the public and the press the right of access to civil judicial proceedings and documents.  "It has long been recognized that the public has a First Amendment right of access to criminal proceedings, civil proceedings, and to 'receive information and ideas' pertaining to the conduct of public affairs."  Center for Nat'l Sec. Studies v. United States, 215 F. Supp. 2d 94, 111-12 (D.D.C. 2002) (footnotes omitted) (quoting Kleindienst v. Mandel, 408 U.S. 753, 762 (1972)) cert. denied sub nom., Center for Nat'l Sec. Studies v. DOJ, 540 U.S. 1104 (2004); see also Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999) (citing Grove Fresh Distribs. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994)); Washington Post, 935 F.2d at 287 (holding that the First Amendment "guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed.").  The presumptive right of access to pretrial civil proceedings "derives from the core purpose of the First Amendment, which is to ensure 'freedom of communication on matters relating to the functioning of government.'"  Center for Nat'l Sec. Studies,

215 F. Supp. 2d at 112 (quoting Richmond Newspapers Inc. v. Virginia, 448 U.S. 555, 575 (1980)). There can be no doubt that the Objection Materials are judicial documents to which the public's constitutional right of access applies.

The Objection filed by Plaintiffs will be dispositive of the issues presented to Special Master Burbank. The Court's ruling would have enormous importance for thousands of present and former NFLPA members. In addition, the public has a great deal of interest in the dispute between the NFL and its players, because of the parties and the subject matter, and they also need to have confidence in the functioning of their courts. The public's confidence in the judicial system is bolstered when the public can measure the result against the evidence as it unfolds. Finally, because of this interest, this is the type of case which underscores the importance of the Court's work in a matter closely watched by the public.

Under these circumstances, then, the public's presumptive right of access to the Objection Materials is particularly acute, as is reflected in those cases where the issues under consideration are potentially dispositive. See, e.g., In re Guidant Corp., supra, 245 F.R.D. at 636; Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (holding that the "rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case"); San Jose Mercury News, Inc. v. U.S. Dist. Ct., 187 F.3d 1096, 1102 (9th Cir. 1999) (holding that the common law right of public access reaches materials used in support of a summary judgment motion in a civil action); Joint Stock Soc'y v. UDV N. Am., Inc., 104

F. Supp. 2d 390, 401 (D. Del. 2000) (unsealing selected materials that were improperly admitted on summary judgment motion because the public, nonetheless, has the right of access to record evidence); Joy v. North, 692 F.2d 880, 893-97 (2d Cir.) ("documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons"); Stone v. Univ. of Md. Med. Sys., 948 F.2d 128, 129-31 (4th Cir. 1991) (reversing order sealing records attached to summary judgment motion); Cianci v. New Times Publ'g Co., 88 F.R.D. 562, 564-65 (S.D.N.Y. 1980) (granting access to discovery materials filed in connection with the defendants' unsuccessful motion to dismiss).

   B.   **The parties must meet a high burden to establish that any of the Objection Materials should be redacted or sealed.**

To be sure, there are instances in which a litigant can overcome the presumptive right of access where, for example, bona fide trade secrets will be disclosed. But it is black-letter law that the party seeking to file materials under seal must first make a "'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements' . . . that the disclosure [of the information] will result in a 'clearly defined and very serious injury to its business.'" United States v. Exxon Corp., 94 F.R.D. 250, 251 (D.D.C. 1981) (quoting 8 Wright & Miller, Federal Practice & Procedure § 2035, at 265 (1970) and United States v. IBM, 67 F.R.D. 40, 46 (S.D.N.Y. 1975)); see also Citizens, 178 F.3d at 944; Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993) (holding that the party wishing to file under seal bears the burden of showing some significant interest that outweighs the presumption of access); Johnson

9

v. Greater Southeast Community Hosp. Corp., 951 F.2d at 1268, 1278 (D.C. Cir. 1991) (holding that a party seeking to file records under seal must show "specific reasons why the record, or any part thereof, should remain under seal"). The Court must then articulate the interest that it is protecting by sealing the information and make "findings specific enough that a reviewing court can determine whether the closure order was properly entered." Press-Enter. Co. v. Superior Ct., 464 U.S. 501, 510 (1984).

Showing good cause is not a simple task. The Supreme Court has pointed out that there must be "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press-Enter., 464 U.S. at 510. Indeed, in Johnson, the D.C. Circuit made clear that a party's general statement that sealing is required to keep its "processes out of the public eye" is insufficient to justify sealing court files in a civil case. Johnson, supra, 951 F.2d at 1277. Similarly, the Sixth Circuit has pointed out that "[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983).

Some courts have recognized that a party seeking to seal a dispositive document or one which could radically change the focus of the case -- as the NFL Defendants do here -- must show more than "good cause"; it must "articulate[] compelling reasons supported by specific factual findings" to justify the continued sealing of the document. Foltz v.

10

State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003) (emphasis added).[2] "A 'good cause' showing will not, without more, satisfy a 'compelling reasons' test." Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006) (citations omitted). Rather, a court must "base its decision [to seal certain judicial records relating to a dispositive motion] on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995) (citing Valley Broad. Co. v. United States Dist. Ct., 789 F.2d 1289, 1295 (9th Cir. 1986)). As the Ninth Circuit has stated, "[u]nlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default." Kamakana, 447 F.3d at 1180 (citing Nixon, 435 U.S. at 597).

## C. To the extent that the NFL Defendants prove they are entitled to protection for any of the Objection Materials, such protection must be narrowly tailored.

Even if the NFL Defendants are ultimately able to identify the requisite good cause or compelling reasons for the need for some secrecy, the relief provided must be narrowly tailored. "[T]o deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling government interest, and is narrowly tailored to serve that interest." Press-Enter., 464 U.S. at 510 (quoting Globe Newspaper, 457 U.S. at 606-07). Furthermore, "[s]hould the court determine that some kind of sealing order is warranted, that order should be no

---

[2] The Eighth Circuit has not yet addressed the Ninth Circuit's "compelling reasons" test, though there is no reason not to adopt it.

11

broader than is necessary to protect those specific interests identified as in need of protection." Johnson, 951 F.2d at 1278.  As Judge Easterbrook of the Seventh Circuit has noted, "Holding trade secrets in confidence is one thing, holding entire judicial proceedings in confidence is quite another." PepsiCo, Inc. v. Redmond, 46 F.3d 29, 31 (7th Cir. 1995).

      To the extent that the NFL Defendants affirmatively demonstrate that they are entitled to protection for any information within the Objection Materials, the legally acceptable form of relief would be a narrow redaction of the Objection Materials released to the public, and the News Organizations.  See, e.g., In re Search Warrants Issued on June 11, 1988 for the Premises of Three Buildings at Unisys, Inc., 710 F. Supp. 701, 705 (D. Minn. 1989) ("The court finds that the privacy rights of certain individuals implicated in the sealed documents are of a compelling nature adequate to overcome the first amendment rights of public access.  The portion of the documents redacted to protect these individuals is very small, amounting to approximately twenty-five words.  The [F]irst [A]mendment requires disclosure of all the other material except where the government has shown a compelling interest in its ongoing investigation"); EEOC v. Dial Corp., No. Civ. A. 99C 3356, 2000 WL 684195 (N.D. Ill. May 16, 2000) (denying motion to seal documents relating to summary judgment motion in sexual harassment suit because there was no good cause shown, but permitting redaction of personal identifying information).

Plaintiffs have offered to redact portions of their memorandum before unsealing it. The News Organizations believe that such an obligation extends to the NFL Defendants and the documents they are about to file. Ultimately, the obligation should extend to the 6 binders of the record of the proceeding before Special Master Burbank.

> D. **The NFL Defendants have not even attempted to meet their burden to show good cause or articulate compelling reasons to seal the Objection Materials, which should therefore be unsealed.**

There is no question that the Objection Materials are judicial documents. In fact, these documents will play a pivotal role in the Court's decision in this case. Accordingly, the News Organizations and public have a presumptive right of access to those materials under the First Amendment and common law. The burden falls squarely on the NFL Defendants to demonstrate why their interests overcome the public's presumptive right of access to the briefs and exhibits and literally every other document the NFL parties have filed with the Court. See, e.g., Capellupo v. FMC Corp., Civ. Nos. 4-85-1239, 4-86-945, 1989 WL 42615 at *2 (D. Minn. Apr. 28, 1989); Leucadia, Inc. v. Applied Extrusion Tech., Inc., 998 F.2d 157, 165 (3d Cir. 1993) (holding that the party wishing to seal bears the burden of showing some significant interest that outweighs the presumption of access). The NFL Defendants not only have not met that burden, they haven't even tried to do so.

Indeed, pursuant to the Protective Order, the NFL Defendants were not required to make any showing to designate discovery materials as confidential. (See Protective

13

Order, ¶ 1.)³ Once they designated their trial materials as confidential, moreover, the filing of those materials -- or "any documents," (such as Plaintiffs' Objection and supporting papers, which contain designated, confidential materials -- would automatically be filed under seal. (See Protective Order, ¶ 5.)  The NFL Defendants have not shown good cause why the Objection Materials should be sealed, much less articulated compelling reasons to do so.  And because of this fact, neither the Special Master nor this Court has been given the ability to issue "findings specific enough that a reviewing court can determine whether the closure order was properly entered."  Press-Enter., 464 U.S. at 510.

Finally, the Objection Materials have been sealed in their entirety.  This, of course, is an overly-broad, drastic, and legally untenable solution to protect any information for which there are compelling reasons to seal.  The NFL Defendants have not made any effort to do the responsible thing pursuant to the Protective Order.  They should not be allowed at this juncture to complain that the effort to review the material is too burdensome.  And they should not be allowed to avoid the unsealing of these relevant documents because of their previous lack of effort.  Rather, any remedy granted to the

---

³ Although the News Organizations reserve their right to challenge the terms of the Protective Order, for the purpose of this Motion, the requirements of the First Amendment and common law would be satisfied if this Court: (1) requires the NFL Defendants to show good cause and articulate compelling reasons why any Objection Materials should be sealed; (2) orders redactions no broader than necessary to protect any legitimately redactable secrets; (3) orders the immediate production of any substantive pleading filed with the Court, and (4) requires the NFL Defendants to justify the sealing of any portion of the record of the trial before the Special Master.  Their reasons must be strong enough to support findings by this Court related to any sealed documents.

NFL Defendants must be narrowly tailored to uphold the public's presumptive right of access. Redactions no broader than necessary to protect any legitimately redactable secrets would be such an appropriate remedy. And even that remedy can be entered if, and only if, the NFL Defendants meet their burden by affirmatively showing good cause and articulating compelling reasons for such redactions.

**III.     This Court Should Grant this Motion to Intervene and Unseal the Objection Materials in an Expedited Fashion.**

Each day that the public is denied access to the Objection Materials constitutes a "separate and cognizable" violation of the First Amendment. Nebraska Press Ass'n v. Stuart, 423 U.S. 1327, 1329 (1975); CBS, Inc. v. Davis, 510 U.S. 1315, 1318 (1994). Indeed, time is of paramount importance in cases like this, which implicate the media's right to report upon matters of significant public interest, as the Kentucky Supreme Court has recognized:

> In relative terms, in reporting the news, time is of the essence. News is news when it happens and the news media needs access while it is still news and not history. The value of investigative reporting as a tool to discovery of matters of public importance is directly proportional to the speed of access. This is true when investigating court records after the case is closed as well as with a case in progress.

Courier-Journal & Louisville Times Co. v. Peers, 747 S.W.2d 125, 129 (Ky. 1988). The Courier-Journal court's admonition is particularly true for the News Organizations, on which the public relies for contemporaneous news and analysis. Accordingly, this Court should grant this Motion as soon as possible.

## **CONCLUSION**

For the foregoing reasons, the News Organizations respectfully request that this Court consider this motion on an expedited basis, grant their motion to intervene in this action, and unseal the Objection Materials.

Dated:  February 22, 2011                KELLY AND HANNAH, P.A.


                                         s/Paul R. Hannah
                                         Paul R. Hannah (#40502)
                                         3720 IDS Center
                                         80 South Eighth Street
                                         Minneapolis, MN  55402
                                         (612) 349-6171

                                         *Attorneys for the News Organizations*