```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                 Civil No. 4-92-906(DSD)
```

Reggie White, Michael
Buck, Hardy Nickerson,
Vann McElroy and Dave
Duerson,

       Plaintiffs,

v.                                                              **ORDER**

National Football League;
The Five Smiths, Inc.;
Buffalo Bills, Inc.;
Chicago Bears Football Club,
Inc.; Cincinnati Bengals, Inc.;
Cleveland Browns, Inc.; The
Dallas Cowboys Football Club,
Ltd.; PDB Sports, Ltd.; The
Detroit Lions, Inc.; The Green
Bay Packers, Inc.; Houston Oilers,
Inc.; Indianapolis Colts, Inc.;
Kansas City Chiefs Football Club,
Inc.; The Los Angeles Raiders, Ltd.;
Los Angeles Rams Football Company,
Inc.; Miami Dolphins, Ltd.;
Minnesota Vikings Football Club,
Inc.; KMS Patriots Limited Partnership;
The New Orleans Saints Limited Partnership;
New York Football Giants, Inc.; New York
Jets Football Club, Inc.; The Philadelphia
Eagles Football Club, Inc.; B & B Holdings,
Inc.; Pittsburgh Steelers Sports, Inc.;
The Chargers Football Company; The San
Francisco Forty-Niners, Ltd.; The
Seattle Seahawks, Inc.; Tampa Bay Area
NFL Football Club, Inc.; and Pro-Football,
Inc.,

       Defendants.

      Thomas J. Heiden, Esq., David A. Barrett, Esq., James R.
      Barrett, Esq., Daniel S. Schecter, Esq., Michael J.
      Nelson, Esq. and Latham & Watkins, 233 South Wacker
      Drive, Suite 5800, Chicago, IL 60606; Mark Jacobson,
      Esq., Anthony N. Kirwin, Esq. and Lindquist & Vennum,

4200 IDS Center, Minneapolis, Minnesota 55402; David G. Feher, Esq. and Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, NY 10019; Jeffrey L. Kessler, Esq., David L. Greenspan, Esq., Eva W. Cole, Esq. and Winston and Strawn, 200 Park Avenue, Suite 45100, New York, NY 10166; James W. Quinn, Esq. and Weil, Gotshal & Manges, 767 Fifth Avenue, New York, New York 10153; Heather McPhee, DeMaurice F. Smith, Esq. and NFL Players Association, 1133 20th Street N.W., Washington, D.C. 20036; Timothy R. Thornton, Esq., and Briggs & Morgan, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402; Barbara P. Berens, Esq., Berens & Miller, PA, 80 South Eighth Street, Suite 3720, Minneapolis, MN 55402, counsel for plaintiffs.

Daniel J. Connolly, Esq., Aaron D. Van Oort, Esq. and Faegre & Benson, Suite 2200, 90 South Seventh Street, Minneapolis, Minnesota 55402; Gregg H. Levy, Esq., Benjamin Block, Esq., Neil K. Roman, Esq.; Leah E. Pogorilier, Esq., Paul W. Schmidt, Esq. and Covington & Burling, 1201 Pennsylvania Ave., N.W., P.O. Box 7566, Washington, D.C. 20044; Shepard Goldfein, Esq. and Skadden, Arps, Slate, Meagher & Flom, Four Times Square, New York, NY 10036; Maxwell M. Blecher, Esq. and Blecher & Collins, PC, 515 South Figueroa Street, 17th Floor, Los Angeles, CA 90071; counsel for defendants.

This mater is before the court upon the petition to reopen and enforce the stipulation and settlement agreement by Class Counsel and the National Football League Players' Association (collectively, NFLPA). Based on a review of the file, record and proceedings herein, and for the following reasons, the court denies the motion.

## BACKGROUND

The background of this action is set out in prior orders, and

2

the court recites only those facts necessary for the disposition of the instant motion. On September 10, 1992, following a ten-week trial, a jury found the NFL in violation of § 1 of the Sherman Antitrust Act. See McNeil v. Nat'l Football League (Plan B Free Agency), No. 4-90-476, 1992 WL 315292, at *1 (D. Minn. Sept. 10, 1992). Following the verdict, individual players sought injunctive relief, requesting free agency prior to the 1992 season. See Jackson v. Nat'l Football League, 802 F. Supp. 226, 228 (D. Minn. 1992). Based on the McNeil verdict, the court temporarily enjoined enforcement of Plan B.[1] Id. at 235. Less than two weeks after the McNeil verdict, players Reggie White, Michael Buck, Hardy Nickerson, Vann McElroy and Dave Duerson brought an antitrust class action, seeking injunctive relief in the form of total or modified free agency. See White v. Nat'l Football League, 822 F. Supp.

---

[1] Plan B was a right of first refusal system. As the court explained in Jackson:
> [E]very NFL club retains rights to "its players" even though, in the case of veteran free agents, contractual rights to a player no longer exist. When a veteran player's contract has expired and a competing NFL club makes an offer to that player, the player's old team may keep the player simply by matching the competing offer; the player's old club therefore is said to have a "right of first refusal" as to the player's services. If the competing offer is large enough, and the club to which the player was previously under contract does not choose to match a competing offer, the old club will receive draft choice "compensation" which may be extremely costly to the acquiring club.

Jackson, 802 F. Supp. at 228 n.1 (citation omitted).

3

1389, 1395 (D. Minn. 1993).

Prior to a decision on the merits in White, the parties settled and a mandatory settlement class was certified for damages and injunctive relief. As a result, the NFLPA became the exclusive bargaining authority for football players, and the NFLPA and NFL owners (NFL) entered into a stipulation and settlement agreement (SSA). On April 30, 1993, the court approved the SSA. The parties also entered into a Collective Bargaining Agreement (CBA) that mirrors the SSA. The parties amended and extended the SSA in 1996, 1999, 2002 and 2006. See ECF Nos. 415, 455, 504, 526.

Pursuant to the 2006 SSA, the final League Year was to be 2012. See ECF No. 524, Art. XXV, § 2 [hereinafter 2006 SSA]. League Year was defined as "the period from March 1 of one year through and including the last day of February of the following year." Id. Art. I(m). Either party, however, could terminate the final two years of the SSA "by giving written notice to the other party on or before November 8, 2008." Id. Art. XXV, § 3(a). On May 20, 2008, the NFL opted out of the final two years of the SSA. White v. Nat'l Football League, 766 F. Supp. 2d 941, 944 (D. Minn. 2011). As a result, 2010 became the Final League Year, which was to be an Uncapped Year.[2] See 2006 SSA Art. I(be)-(bf).

Prior to the conclusion of the 2010 League Year, the NFLPA and

---

[2] Uncapped Year means "any League Year for which a Salary Cap is not in effect." SSA Art. I(be).

4

NFL were unable to negotiate a new labor agreement, and the terms of the SSA and CBA expired. Thereafter, the NFL instituted a lockout of the NFLPA. In response, nine professional players and one prospective professional football player filed a putative class action against the NFL, alleging, among other things, a violation of § 1 of the Sherman Antitrust Act. See Brady v. Nat'l Football League, 644 F.3d 661, 662 (8th Cir. 2011). Prior to a final decision on the merits in Brady, Judge Nelson ordered the parties to participate in mediation with Chief Magistrate Judge Boylan. See Brady v. Nat'l Football League, No. 11-cv-639 (D. Minn. Apr. 11, 2011). Mediation was successful, and the parties stipulated to dismissal of the Brady action on August 4, 2011. On that same day, the NFLPA and the NFL entered into a new CBA.

As part of the 2011 CBA, the NFLPA released all pending claims against the NFL (NFLPA Release):

> The NFLPA on behalf of itself, its members, and their respective heirs ... releases and covenants not to sue, or to support financially or administratively, or voluntarily provide testimony of any kind, including by declaration or affidavit in, any suit or proceeding (including any Special Master proceeding brought pursuant to the White SSA and/or the Prior [CBA]) against the NFL or any NFL Club or any NFL Affiliate with respect to any antitrust or other claim asserted in White v. NFL or Brady v. NFL, including, without limitation ... collusion with respect to any League Year prior to 2011, or any claim that could have been asserted in White or Brady related to any other term or

5

> condition of employment with respect to conduct occurring prior to the execution of this Agreement.[3]

Connolly Decl. Ex. A, at Art. 3, § 3(a), ECF No. 721 [hereinafter 2011 CBA].  The parties also executed a stipulation of dismissal (SOD) in this action on August 4, 2011.  The parties

> stipulate[d] to the dismissal with prejudice of all claims, known and unknown, whether pending or not, regarding the [SSA] including but not limited to the claims asserting breach of the SSA related to (i) television contracts and broadcast revenues; and (ii) asserted collusion with respect to the 2010 League Year, excepting only the pending claim filed March 11, 2011 relating to an alleged rookie shortfall on the part of the Philadelphia Eagles.

Stipulation of Dismissal, ECF No. 701.  In response, on August 11, 2011, the court issued a text entry order dismissing all pending claims and outstanding motions in this matter.

On May 23, 2012, the NFLPA filed a petition to reopen and enforce the SSA,[4] claiming, among other things, collusion based on an alleged secret $123 million salary cap during the 2010 League Year.  In response, the court issued a briefing schedule and heard oral argument on September 6, 2012.  At oral argument, the court requested that the NFL file a supplemental memorandum and continued

---

[3] A similar covenant not to sue was executed by the NFL.  See Connolly Decl. Ex. A, at Art. 3, § 3(b).

[4] The NFLPA filed a motion to reopen on July 26, 2012.  See ECF No. 711.

its consideration of this matter until also receiving a supplemental reply memorandum by the NFLPA. See Tr. 60:11-13.[5]

## DISCUSSION

For purposes of this motion, the court "assume[s] that the movant's factual allegations [in the petition] are true, as on a motion to dismiss." United States v. Denham, 817 F.2d 1307, 1309 (8th Cir. 1987) (citations omitted) (explaining in context of Rule 60(b) motion to reopen).[6] The NFL argues that the court should deny the petition to reopen because (1) the NFLPA dismissed with prejudice all claims relating to the SSA, (2) the NFLPA released and covenanted not to bring claims pertaining to the SSA in the 2011 CBA and (3) the underlying claims are time-barred. Because the NFLPA dismissed all claims pertaining to the underlying action, the court need only address the NFL's first argument.

---

[5] The NFLPA requested an opportunity to respond to the NFL's supplemental opposition memorandum. See Tr. 61:19-22. The court explained that it would "entertain ... a request to have further written materials" from the NFLPA if the NFL raised new arguments in its supplemental memorandum. Id. 61:25-62:5. Subsequent to the NFL filing the supplemental memorandum, the court received an unopposed request by the NFLPA seeking leave to file a supplemental reply memorandum under seal. On October 10, 2012, the court granted the request. See ECF No. 737.

[6] Because the court denies the NFLPA's motion, it need not determine if the motion should have been brought pursuant to Rule 60(b).

7

The 2006 SSA provided that "the Court shall retain jurisdiction over this Action to effectuate and enforce the terms of this Agreement and the Final Consent Judgment." 2006 SSA Art. XX, § 1. The NFL argues, however, that this language is inoperative and that the SOD divested this court of jurisdiction. The NFLPA responds that the SOD has no preclusive effect because the court did not approve the stipulation pursuant to Rule 23(e). The court determines that such approval was unnecessary, as the 2006 SSA lapsed by its own terms at the conclusion of the 2010 League Year.

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); see Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 764 (8th Cir. 2001). With this in mind, the court approved, pursuant to Rule 23(e), the initial SSA and each subsequent amendment.[7] See ECF Nos. 415, 455,

---

[7] Court approval under Rule 23(e) was necessary for each amendment because the proposed changes were made during the effective period of the then-operative SSA. See 1993 SSA Art. XXV, ECF No. 319 ("[T]his Agreement shall be effective from the date hereof and shall continue in full force and effect until March 1, 2000 ...."); Quinn Decl. ¶ 3, ECF No. 399 (notifying court on February 6, 1996, that the "amendments will extend the term of the [SSA] for at least one year, through the 2000 League Year, and for one or two additional League Years beyond that if neither side cancels these further extensions"); Quinn Decl. ¶ 3, ECF No. 450 (notifying court on January 26, 1999, that the extension "will extend the term of the [SSA] through the 2003 League Year on an unconditional basis, or until the 2004 League Year unless either party provides notice ... that it wishes to cancel the last year of

(continued...)

504, 526. The court-approved SSAs, including the 2006 SSA that is the subject of the current dispute, did not, however, contemplate indefinite court oversight, and each specified a termination date whereupon the agreement would lapse.[8] For example, the 2006 SSA continued until "the last day of the 2012 League Year," unless either party "terminate[d] both of the final two Capped Years (2010 and 2011)." 2006 SSA Art. XXV, §§ 2-3(a). In other words, the 2006 SSA was unlike a consent decree where indefinite court oversight is ordered. See, e.g., McDonald v. Carnahan, 109 F.3d 1319, 1321 (8th Cir. 1997) (analyzing consent decree that provided for continuing district court supervision). As a result, when the parties were unable to negotiate an extension to the 2006 SSA, the agreement lapsed by its own terms at the conclusion of the 2010 League Year. It was at this point that any prospective court action or agreements between the NFLPA and NFL - such as a

---

[7](...continued)
the extension"); Quinn Decl. ¶ 3, ECF No. 499 (notifying court on February 15, 2002, that the amendment "will extend the term of the [SSA] through the 2007 League Year"); Kessler Decl. ¶ 3, ECF No. 519 (notifying court on July 18, 2006, that amendment "will extend the term of the [SSA] through up to the 2012 League Year").

[8] The FCJ also did not contemplate indefinite oversight. See Final Consent Judgment 6, ECF No. 318 (explaining that court only "retain[ed] exclusive jurisdiction over this action to effectuate and enforce the terms of the [SSA], as amended"). As a result, when the SSA lapsed, so did the court's "exclusive jurisdiction." Id.

stipulation of dismissal - no longer required Rule 23(e) approval.[9]

Thereafter, on August 4, 2011, the parties agreed "to the dismissal with prejudice of all claims, known and unknown, whether pending or not, regarding the [SSA]." Stipulation of Dismissal, ECF No. 701. As no Rule 23(e) approval was required, because the SOD was executed after the expiration of the 2006 SSA, the court is without jurisdiction to enforce the agreement. See Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1189 (8th Cir. 1984) (noting that stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii) is effective upon filing); see also Anago Franchising, Inc. v. Shaz, LLC, 677 F.3d 1272, 1277-78 (11th Cir. 2012) (collecting cases). In other words, the NFLPA released the claims it attempts to assert in the underlying action. Therefore, the court is without jurisdiction and denies the NFLPA's petition to reopen.

---

[9] In so stating, the court acknowledges that had the parties not executed the SOD, jurisdiction to enforce the SSA would have been present. See Jenkins v. Kan. City Mo. Sch. Dist., 516 F.3d 1074, 1081 (8th Cir. 2008) (explaining that court retains jurisdiction to enforce settlement agreement).

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the plaintiffs' petition to reopen [ECF Nos. 703, 711] is denied.

Dated:  December 31, 2012

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court